IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT
AUSTIN DIVISION

| | | |
|---|---|---|
| DANIEL BOSTIC, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:22-cv-158-RP |
| | § | |
| THE DAILY DOT, LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## DEFENDANTS ZACHARY PETRIZZO AND THE DAILY DOT, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Ashley I. Kissinger
State Bar No. 00795464
kissingera@ballardspahr.com
BALLARD SPAHR LLP
1225 17th Street, Suite 2300
Denver, CO  80202-5596
Telephone: 303.376.2407
Facsimile: 303.296.3956

Chad R. Bowman
(*pro hac vice motion forthcoming*)
bowmanchad@ballardspahr.com
Matthew S.L. Cate
(*pro hac vice motion forthcoming*)
catem@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW
12th Floor
Washington, DC  20006-1157
Telephone: 202.661.2200
Facsimile: 202.661.2299

*Attorneys for Defendants The Daily Dot, LLC
and Zachary Petrizzo*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................... 1

BACKGROUND ..................................................................................................... 2

    A.    Bostic helps found and works for Stop the Steal in 2018 and 2020. ..................... 2

    B.    After encouraging a "Wild Protest" on January 6, Bostic marches with others to the U.S. Capitol, where a violent mob storms inside and delays the certification of the presidential vote ................................................................ 5

    C.    *Salon* publishes an extensive report about Bostic's role in Stop the Steal and his long-running association with fellow movement organizer Ali Alexander. ........................................................................................................ 6

    D.    *The Daily Dot* publishes an article about Bostic's planned appearance at a mainstream conservative political conference. ........................................................ 7

    E.    Bostic files this action. ............................................................................................ 8

ARGUMENT ........................................................................................................... 9

I.    The Article does not reasonably convey the defamatory meaning Bostic alleges. ............. 9

II.    The Article's description of Bostic as an organizer and coordinator of the January 6 "riot" and "insurrection" is not actionable in defamation because that description is not capable of ready, precise determination as true or false ...................... 12

    A.    To be actionable as defamation, statements must be provably false assertions of fact. ...................................................................................................... 12

    B.    The Article's characterizations of Bostic's role in January 6 are not provably false assertions of fact. ............................................................................... 13

III.    Bostic does not—and cannot—adequately plead that Defendants published with actual malice. ....................................................................................................... 16

    A.    Bostic is a limited-purpose public figure. ............................................................. 16

    B.    Bostic has not asserted plausible allegations of actual malice. ............................. 17

    C.    Bostic cannot demonstrate actual malice as a matter of law because Defendants' characterization of his role in January 6 was a rational interpretation of ambiguous events. ...................................................................... 19

CONCLUSION ....................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................................................. 17, 18

*Ayyadurai v. Floor64, Inc.,*
    270 F. Supp. 3d 343 (D. Mass. 2017) ................................................................... 13, 15

*Batzel v. Smith,*
    333 F.3d 1018 (9th Cir. 2003) ................................................................................... 11

*Biro v. Condé Nast,*
    807 F.3d 541 (2d Cir. 2015) ....................................................................................... 18

*Biro v. Condé Nast,*
    963 F. Supp. 2d 255 (S.D.N.Y. 2013) ....................................................................... 16

*Bose Corp. v. Consumers Union,*
    466 U.S. 485 (1984) .................................................................................................... 20

*Connick v. Myers,*
    461 U.S. 138 (1983) .................................................................................................... 15

*Corsi v. Infowars LLC,*
    No. A-20-CV-298-LY, 2021 U.S. Dist. LEXIS 98486 (W.D. Tex. May 24, 2021) ............... 18

*Dallas Morning News, Inc. v. Hall,*
    579 S.W.3d 370 (Tex. 2019) ....................................................................................... 10

*Dallas Morning News, Inc. v. Tatum,*
    554 S.W.3d 614 (Tex. 2018) ...................................................................... 1, 2, 10, 12

*Deripaska v. Associated Press,*
    282 F. Supp. 3d 133 (D.D.C. 2016) ........................................................................... 16

*Dorsey v. Portfolio Equities, Inc.,*
    540 F.3d 333 (5th Cir. 2008) ....................................................................................... 3

*Eimann v. Soldier of Fortune Magazine, Inc.,*
    680 F. Supp. 863 (S.D. Tex. 1988) ............................................................................ 12

*Farah v. Esquire Magazine,*
    736 F.3d 528 (D.C. Cir. 2013) .................................................................................... 13

*Freedom Newspapers v. Cantu,*
    168 S.W.3d 847 (Tex. 2005) .................................................................................. 2, 20

*Galveston Newspapers, Inc. v. Norris*,
    981 S.W.2d 797 (Tex. App. 1998) ........................................................... 12

*Green v. CBS Inc.*,
    286 F.3d 281 (5th Cir. 2002) ................................................................. 11

*Greer v. Abraham*,
    489 S.W.3d 440 (Tex. 2016) .................................................................. 19

*Hourani v. Psybersolutions LLC*,
    164 F. Supp. 3d 128, 144 (D.D.C. 2016) ......................................... 16, 18

*Huckabee v. Time Warner Entm't Co.*,
    19 S.W.3d 413 (Tex. 2000) .................................................................... 17

*Hustler Magazine v. Falwell*,
    485 U.S. 46 (1988) ................................................................................ 12

*Jones v. Dirty World Entm't Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) ................................................................ 11

*KBMT Operating Co., LLC v. Toledo*,
    492 S.W.3d 710 (Tex. 2016) .................................................................. 11

*KTRK TV v. Felder*,
    950 S.W.2d 100 (Tex. App. 1997) ......................................................... 12

*Mayfield v. NASCAR*,
    674 F.3d 369 (4th Cir. 2012) ................................................................ 18

*Michel v. NYP Holdings*, Inc.,
    816 F.3d 686 (11th Cir. 2016) .............................................................. 18

*Miller v. Transam. Press, Inc*.,
    621 F.2d 721 (5th Cir. 1980) ................................................................ 16

*Palestine Herald-Press Co. v. Zimmer*,
    257 S.W.3d 504 (Tex. Ct. App. 2008) ..................................... 2, 12, 13, 14

*Phoneternet, LLC v. LexisNexis Risk Sols., Inc.*,
    No. 3:18-CV-1719-L, 2019 U.S. Dist. LEXIS 168169 (N.D. Tex. Sept. 30, 2019) ................ 18

*Pippen v. NBCUniversal Media, LLC*,
    734 F.3d 610 (7th Cir. 2013) ................................................................ 18

*Rogers v. Dallas Morning News*,
    889 S.W.2d 467 (Tex. App. 1994) ......................................................... 12

*Saenz v. Playboy Enters., Inc.*,
  653 F. Supp. 552 (N.D. Ill. 1987) ................................................................ 15, 20

*Schatz v. Republican State Leadership Comm.*,
  669 F.3d 50 (1st Cir. 2012) ................................................................................ 18

*Sparks v. Reneau Publ'g, Inc.*,
  245 F.R.D. 583 (E.D. Tex. 2007) ....................................................................... 12

*Time, Inc. v. Pape*,
  401 U.S. 279 (1971) ....................................................................................... 2, 19

*Tyson v. Austin Eating Disorders, LLC*,
  No. A-13-CA-180-SS, 2013 U.S. Dist. LEXIS 129434 (W.D. Tex. Aug. 29, 2013) ......... 18, 19

*Walker v. Beaumont Indep. Sch. Dist.*,
  938 F.3d 724 (5th Cir. 2019) ................................................................ 2, 17, 18, 19

*Weyrich v. New Republic, Inc.*,
  235 F.3d 617 (D.C. Cir. 2001) ............................................................................ 13

*WFAA-TV, Inc. v. McLemore*,
  978 S.W.2d 568 (Tex. 1998) ........................................................................ 16, 17

**Statutes**
47 U.S.C. § 230(c)(1) ............................................................................................ 11

Tex. Civ. Prac. & Rem. Code § 73.005(b) .............................................................. 10

**Rules**
Federal Rule of Civil Procedure 12(b)(6) ........................................................... 1, 13

Defendants The Daily Dot, LLC and Zachary Petrizzo move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) and state the following in support:

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Daniel Bostic spent two months after the 2020 presidential election working for and publicly promoting the "Stop the Steal" organization and movement whose adherents violently attacked the U.S. Capitol on January 6, 2021. He was publicly identified as a Stop the Steal organizer, a "featured guest" at its events, and an officer for its political action committee. In the days leading to January 6, Bostic promoted Stop the Steal's "#WildProtest" rally set for that day, and he live streamed his participation in it to his thousands of Twitter followers. After the chaos and violence his movement wrought, Bostic argued that the public should have expected those "repercussions" for allegedly holding "secret" elections.

In light of Bostic's role in Stop the Steal, his statements about the movement and about January 6, and details reported by other news organizations, Petrizzo wrote an article for *The Daily Dot* (the "Article") discussing Bostic's role in the events of January 6, and shining a light on the decision of the influential Conservative Political Action Committee (CPAC) to host him as a speaker at its annual conference. Bostic brought this defamation case to dispute the Article's descriptions of him as a "Jan. 6 Capitol riot organizer" and someone who "helped coordinate the Jan. 6 Capitol insurrection." He protests that Petrizzo is a "partisan" who dislikes Bostic's "political views." In short, this case is a political argument, made for political purposes, masquerading as a lawsuit. The First Amendment compels its dismissal, with prejudice, for several reasons.

First, Bostic alleges the Article implies that he organized the violent attack on the Capitol, but this claim for defamation by implication fails as a matter of law. *Dallas Morning*

*News, Inc. v. Tatum*, 554 S.W.3d 614, 633 (Tex. 2018).[1] Because there is no indication in the
Article that Defendants *meant* to convey that implication, his claims fail. *Id.* at 635.

Second, the Article's characterization of Bostic's role in the events of January 6 is not
actionable because it uses subjective terms and is thus not capable of ready determination as true
or false. *See, e.g.*, *Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 509 (Tex. Ct. App.
2008); *Tatum*, 554 S.W.3d at 638.

Third, despite his status as a public figure, Bostic has failed to allege facts plausibly
establishing that Defendants published the article with actual malice. *Walker v. Beaumont Indep.
Sch. Dist.*, 938 F.3d 724, 744 (5th Cir. 2019). And, as a matter of law, Plaintiff cannot possibly
plead actual malice because the Article's assessment of Bostic's role in the events of January 6 is
a rational interpretation of ambiguous events. *See Freedom Newspapers v. Cantu*, 168 S.W.3d
847, 855 (Tex. 2005) (citing, *e.g.*, *Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971)).

The Amended Complaint should therefore be dismissed with prejudice.

## BACKGROUND

### A.   Bostic helps found and works for Stop the Steal in 2018 and 2020.

Bostic is a former "aspiring actor and model" who has been involved in conservative
politics since 2013. *See* Am. Compl. ¶ 15, ECF No. 5. In 2018, he helped start a group called
"Stop the Steal" to protest a vote recount in Florida. Ex. B (C-SPAN Video) at 0:23 ("I helped
Ali Alexander launch Stop the Steal in Broward County, Florida."); *see also* Compl. ¶ 15,
ECFNo. 1 (alleging Bostic "helped found" Stop the Steal).[2] Bostic then became "a producer and

---

[1] Unless otherwise noted, all internal marks, citations, and brackets have been omitted from
material cited in this motion.

[2] References in this motion to "Ex. __" are to the materials referred to in the concurrently filed
Request for Judicial Notice and attached as exhibits to the accompanying Declaration of Records
Request Processor at the Internet Archive (Ex. A) and the Declaration of Matthew Cate (Exs. 2-

documentary filmmaker," and starting in 2020 he was promoting a movie called "The Plot Against the President." Am. Compl. ¶¶ 15, 17.[3]

By the time of the 2020 presidential election, Bostic had more than 51,000 followers on Twitter. Ex. A at 6; *see also* Compl. ¶ 16 (alleging about 56,100 followers—"a relatively large number of users"—as of February 22, 2022). On that platform, and immediately after the 2020 presidential election, Bostic was publicly representing that he was "Working #StopTheSteal," and posting tweets as "Daniel Bostic #StopTheSteal" and later directly linked to the group's website from his Twitter profile. Ex. A at 6, 45. From the start, and over the next several weeks, Stop the Steal's website publicly identified Bostic as an "organizer" and contact for Georgia events. *Id.* at 2, 12, 27, 42. In the days immediately after the election, Bostic spelled out the group's mission in a series of tweets, writing that "[w]e are picking up where our leaders are failing us" and reporting that "[p]atriots are standing outside for days at time" and "spending massive amounts of our own money flying around the country" to contest the vote count. *Id.* at 8.

The Stop the Steal group—and Bostic's role in it—drew immediate media scrutiny after the election. Three days after the election, for example, *The Daily Dot* reported on the emergence of the "'Stop The Steal' campaign" and its connection with "some of the pro-Trump internet's biggest names." Ex. H and https://bit.ly/3yg7XZ8 (displaying screenshot of Stop the Steal website listing Bostic as associated with the group's efforts in Georgia). Two weeks later, *Salon*

---

12) filed in support thereof. For the reasons set forth in the Request for Judicial Notice, the Court may properly consider these materials in ruling on this motion. *See, e.g.*, *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("A court is permitted [] to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'").

[3] The movie is about "Russiagate," described as "the operation to bring down the President of the United States" and "the biggest political scandal in US history." *See* https://amdcfilms.com/projects/.

published an article revealing Stop the Steal's formation of a political action committee and noting Bostic's role as a PAC officer. *See* Ex. I at 2 and https://bit.ly/3MOQrPX ("Bostic is just one of a number of MAGA-world second-stringers who appear to see Stop the Steal as a way to ride the fantasy of a stolen election into a future of relevance, influence and income after Trump departs the White House."); *see also* Ex. J (FEC filing) at 4 (listing Bostic as assistant treasurer and registered agent of the Stop the Steal PAC).

Bostic argued that no one should be "shame[d] for supporting #StopTheSteal." Ex. A at 8. Throughout the weeks leading to January 6, he encouraged his tens of thousands of Twitter followers to attend Stop the Steal rallies across the country, including in tweets in which he emphasized that he would be a "featured guest." *Id.* at 15 (Washington, D.C.), 30 (Nevada); *see also id.* at 18-19 (Stop the Steal website presenting Bostic as speaker).[4] Thus, for example, Bostic spoke at a Stop the Steal rally on November 14, 2020, at Freedom Plaza in Washington, D.C. The rally was covered by C-SPAN, which broadcast Bostic's remarks while identifying him in a chyron on the screen as a "Stop the Steal Organizer." Ex. B; *see also* Am. Compl. Ex. 1. During that speech, Bostic said he had founded Stop the Steal in 2018 and relied on "an army of patriots" to hold "election officials accountable." Ex. B at 0:21-28, 1:16-1:30. He said Stop the Steal was established "because we realized that we have to bypass the mainstream media . . . that we need bodies in the streets to demand fair, free, and open elections." *Id.* at 1:35-1:50. "[T]hey can't ignore us anymore," he concluded, "and the best is yet to come," he added. *Id.* at 1:50-1:57.

---

[4] Bostic also spoke to the media on behalf of the group. *See* Ex. K at 2:51-3:10 (vowing that "we're going to keep putting people in the streets . . . and . . . bringing awareness to this" in hopes that "our state legislators step back into power" and "tak[e] control of this") (also available at https://www.youtube.com/watch?v=1vOsNHQ4s_w).

**B.      After encouraging a "Wild Protest" on January 6, Bostic marches with others to the U.S. Capitol, where a violent mob storms inside and delays the certification of the presidential vote.**

By late December 2020, Stop the Steal was organizing and promoting something bigger than the local rallies it had been coordinating since the election. An online fundraising page for Stop the Steal told movement supporters that "StopTheSteal.us is working closely, whipping the vote up, with patriots in the Congress" to try to stop certification of "this fraudulent Electoral College." Ex. A at 32. The page directed visitors to "WildProtest.com," which in turn sought donations to help "purchase security, lodging, signage and other necessary items for this wild protest." *Id.* at 33. It also proclaimed that "***We the People*** must take to the US Capitol lawn and steps and tell Congress #DoNotCertify on #Jan6!" and touted its work with members of Congress "who will bravely object to the certification of the Electoral College." *Id.* at 32. Meanwhile, Stop the Steal's website was promoting a January 6, 2021, "Petition Congress" event while continuing to identify Bostic as a Georgia organizer. *Id.* at 36-37.

Bostic also issued calls to action, encouraging his Twitter followers to participate in the "#WildProtest," tweeting on January 3, 2021, that "I'd better see YOU in Washington, DC on January 6th!" *Id.* at 50. He predicted that, as a result of his group's efforts, "Millions of patriots will gather today and tomorrow in Washington, DC to protest." Ex. E. He added: "We did this . . . . We own the narrative now. We own the party now." *Id.*

When the day for "wild protest" came, Bostic attended and was granted front-row access to then-President Trump's speech. Am. Compl. ¶ 18-19.[5]  From that VIP vantage point, Bostic heard Trump relay many of the same sentiments Bostic had been urging since the election. Stop the Steal had for weeks promoted a plan for a "wild protest" that specifically involved marching

---

[5] Bostic helped pay for the Jumbotron used to broadcast the speech. Compl. ¶ 18.

to the Capitol steps. Ex. A at 32. And now, Trump was urging the crowd to march to the Capitol to show Republicans who intended to certify the election results "the kind of pride and boldness that they need to take back our country." *See, e.g.*, "Transcript of Trump's speech at rally before US Capitol," ASSOCIATED PRESS (Jan. 13, 2021), at https://bit.ly/3NiJert. Bostic, his fellow VIPs, and a crowd of "patriots" that Stop the Steal and Bostic helped enlist for the effort then marched toward the Capitol. *See* Am. Compl. ¶ 21; Ex. A at 32-33, 36, 50 (showing Bostic's and Stop the Steal's promotion of January 6 "Wild Protest"); Ex. E (Bostic predicting "millions of patriots" would be in Washington on January 6).

Bostic recorded part of his march in a since-deleted video he posted in a tweet with the caption "Storming the Capitol #StopTheSteal." Am. Compl. ¶ 21. Later that day, Bostic asserted that events "could've all been avoided if we were shown signatures and allowed to audit our elections." Ex. D. He added: "You cannot expect elections to be conducted in secret without repercussions." *Id.* Bostic's Twitter profile at that time publicly represented that he was "Working #StopTheSteal," and it provided a direct link to Stop the Steal's website. Ex. A at 45-46. On January 7, 2021, Bostic tweeted that "[m]any have been asking [what] comes next for #StopTheSteal." *Id.* at 53. He promised an answer, in the form of "[m]ajor announcements coming in the next 72 hours." *Id.* No answer came. Four days later, Bostic's Twitter profile no longer publicized his affiliation with Stop the Steal. *Id.* at 55.

**C.    *Salon* publishes an extensive report about Bostic's role in Stop the Steal and his long-running association with fellow movement organizer Ali Alexander.**

On January 19, 2021, *Salon* published a report about Bostic and fellow Stop the Steal founder Ali Alexander (the "Salon Article"). *See* Ex. C and https://bit.ly/3OmYGnv. Titled "How two friends' farcical, failed schemes ended with the biggest fail of all: Stop the Steal,"[6] the

---

[6] The online version of the Salon Article includes a sub-headline asserting that Alexander and

Salon Article details the two men's long-running friendship and various "schemes" in which they engaged. *Id.* at 1. And it asserts that their "partnership's lasting contribution to the world. . . came earlier this month, when the massive pro-Trump rally they organized on the National Mall on Jan. 6 turned into a violent siege of the U.S. Capitol, defiling the seat of American democracy and leaving half a dozen people dead, including two police officers." *Id.*

In support of that conclusion, the Salon Article describes the genesis of the Stop the Steal movement (including its 2018 iteration in Florida) and discusses Bostic's connection with the Stop the Steal PAC, his work as "the media contact for Stop the Steal," and his work "organiz[ing]" and speaking at rallies for the group. *Id.* at 6. The Salon Article also reports that Bostic "was in Washington with Alexander" on January 6 and that "[t]he two can be clearly identified in video clips climbing the Capitol steps with Alex Jones." *Id.* It also quotes from Bostic's tweets rationalizing the violence. *Id.*[7]

### D.    *The Daily Dot* publishes an article about Bostic's planned appearance at a mainstream conservative political conference.

On February 23, 2021, *The Daily Dot* published the Article, reported by Petrizzo and titled "Jan. 6 'Stop the Steal' organizer says he will be attending CPAC." Am. Compl. Ex. 1. The Article's lead photo, credited to C-SPAN, is an image from the broadcast of Bostic's speech during the November 14, 2020, "Rally for President Trump." *Id.* The Article also includes a hyperlink, just below the photo, to the full video posted on C-SPAN's website. *See id.*; *see also* https://bit.ly/3zJp8na (Article); https://www.c-span.org/video/?478128-1/rally-president-trump-washington-dc.

---

Bostic had "failed upward, all the way to the Capitol." *See* https://bit.ly/3OmYGnv.

[7] The Salon Article also describes Bostic's deletion of "all tweets prior to Jan. 5" and several of Bostic's tweets from January 6. Ex. C at 6.

The crux of the story was Bostic's recent tweet announcing his attendance at the upcoming Conservative Political Action Conference. The Article as a whole is based not only on that social media post but also on prior articles by *The Daily Dot*, *The Washington Post* and other news outlets, the Salon Article, and other social media posts by Bostic and others. *See* Am. Compl. Ex. 1. In addition to discussing Bostic's attendance at CPAC, the Article also reports the expected participation of other people, including Trump, who had worked "to delegitimize the results of the 2020 election," and notes CPAC's apparent desire "to maintain a cordial relationship with [those] most far-right members of the Republican party[.]" *Id.* at 3.

The Article questions CPAC's invitation to Bostic, noting he is a "Jan. 6 Capitol riot organizer and 'Stop The Steal' leader" who "helped coordinate the Jan. 6 Capitol insurrection." *Id.* The Article quotes Bostic's post-January 6 tweets rationalizing the violence and provides a link to the Salon Article. *Id.* The Article also explains that *Salon* had said it found Bostic in January 6 video footage "climbing the Capitol steps with Alex Jones" but that *The Daily Dot* did not find that. *Id.*

**E.    Bostic files this action.**

On February 22, 2022, Bostic filed this suit, asserting claims against Petrizzo, The Daily Dot, LLC, and Clarion Media Group, LLC over publication of the Article. *See* Compl. He filed an Amended Complaint about two months later. Am. Compl.

The operative pleading asserts a claim for defamation against all Defendants, and a claim against Petrizzo for tortious interference with existing contracts and prospective contractual relations. *Id.* While his particular counts do not describe the specific statements on which the claims are based, Bostic's Amended Complaint challenges as false and defamatory the Article's characterizations of him as a "Jan. 6 Capitol Riot organizer" and as someone who "helped

8

coordinate" the "Jan. 6 Capitol insurrection." *Id.* at 1; *see also id.* ¶¶ 3, 7, 22, 38-30, 34.[8] He also repeatedly suggests, contrary to the content of the Article itself, that Defendants accused Bostic of organizing and coordinating not just a "riot" or an "insurrection," but, rather, of organizing and coordinating the violent attacks carried out during the Capitol assault. *See id.* ¶¶ 1, 4, 37. Bostic seeks $15 million in damages and an injunction on the Article. *Id.* ¶ 47.

## ARGUMENT

I.    **The Article does not reasonably convey the defamatory meaning Bostic alleges.**

As Bostic's own allegations and matters subject to judicial notice demonstrate, he was deeply and publicly involved in the widespread movement seeking to undermine the 2020 presidential election and in promoting Stop the Steal events, including one set for January 6, 2021. *See, e.g.*, Am. Compl. ¶¶ 18-21; *see also generally* Ex. A and Ex. A at 50 (Bostic encouraging Twitter followers to join him in "#StopTheSteal #Jan6th #WildProtest"). He was actively involved in the Stop the Steal organization and rallies leading to the January 6 events that are collectively and commonly described as the "Capitol riot" and the "Capitol insurrection." *See* pp. 2-6 *supra*.  He therefore has no basis to sue Defendants for reporting so.

Perhaps for this reason, Bostic embellishes his complaint to suggest that Defendants implied more than they actually published.  Despite his repeated contentions otherwise, however, the Article does <u>not</u> accuse Bostic of having organized, coordinated, or participated in the "violence," "attacks," "illegal[] ent[ry] of the Capitol," or "property damage" perpetrated on January 6. *See* Am. Compl. ¶¶ 1, 4, 37. To pursue claims on a theory that the Article implies such conduct, Bostic "must make an especially rigorous" showing that the language actually in

---

[8] Bostic alleges that Petrizzo repeats the same assertions in a July 2, 2021, article Petrizzo wrote for Salon. Am. Compl. ¶ 6, Ex. 2.

the Article is "reasonably capable" of supporting that inference. *Tatum*, 554 S.W.3d at 633. To make that showing, he must "point to additional, affirmative evidence within" the body of the Article showing that Defendants "intend[ed] or endorse[d] the defamatory inference." *Id.* at 635. Importantly, whether a plaintiff has made this showing is a question of law for the court to decide. *Id.* at 631.

There is no evidence in the Article's language, or the reasonable inferences arising from it, that Defendants intended or endorsed an inference that Bostic coordinated or engaged in violent activity. Am. Compl. Ex. 1. For one, the Article does not contain *any* mention of Bostic acting violently or entering the Capitol. *Id.* Nor does it offer any facts suggesting that Bostic planned illegal acts committed by others. *Id.*

Further, the manner and context in which the Article presents the Salon Article's "climbing the Capitol steps" claim shows that Defendants were examining reports and allowing readers to draw their own conclusions: By directly quoting, in full, and clearly attributing the allegation to *Salon*, Defendants took pains to relay to readers that they were not endorsing *Salon*'s allegation. And the Article in fact *contrasts* the Salon Article's accusation with what "The Daily Dot found" about Bostic's role in the events of the day (*i.e.*, that Bostic had "defended the Capitol riots" on Twitter, and had "marched in Washington, D.C."). *Id.* at 3.

Moreover, state and federal law preclude Bostic from basing any part of his claim on the Article's "climbing the Capitol steps" passage. Texas law immunizes accurate reports of third-party accusations concerning matters of public concern. *See* Tex. Civ. Prac. & Rem. Code § 73.005(b) (truth defense immunizes "an accurate reporting of allegations made by a third party regarding a matter of public concern"); *accord Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 380 (Tex. 2019) (because "the plaintiff has the burden under the Act to show falsity at the

motion-to-dismiss stage" where a media outlet has reported allegations made by a third party about a matter of public concern, court reversed denial of motion to dismiss where media's report of third party allegations was accurate); *Green v. CBS Inc.*, 286 F.3d 281, 284 (5th Cir. 2002) ("In cases involving media defendants, such as this, the defendant need not show the allegations are true, but must only demonstrate that the allegations were made and accurately reported.") (applying Texas law and citing cases). Also, federal law immunizes Defendants from any liability arising from their reporting of the "climbing the Capitol steps" accusation because *Salon*, an online news magazine, was the original source of the passage, and Bostic does not (and could not) assert Defendants materially contributed to its creation. *See* 47 U.S.C. § 230(c)(1); *see also Batzel v. Smith*, 333 F.3d 1018, 1035 (9th Cir. 2003) (newsletter editor who redistributed allegedly defamatory content received via email held immune, notwithstanding decision to publish the information in another format while making minor edits to content); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 415 (6th Cir. 2014) (editorial decision to share another's online content does not strip away Section 230 immunity).

Finally, a reasonable reader of the Article would have known that had Defendants actually intended to accuse Bostic of participating in or organizing the attack on the Capitol, the Article would have made such an explosive assertion explicitly and "not left the [reader] to wonder." *See KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 715 (Tex. 2016) (holding that broadcast not reasonably capable of conveying plaintiff's alleged implied defamatory meaning because reasonable readers would have expected accusation of outrageous conduct to be stated in "no uncertain" terms).

Because the Article is not reasonably construed as accusing Bostic of organizing violent activity at the Capitol, and there is nothing in the Article demonstrating the Defendants' intent to

convey such an accusation, the Court should dismiss Bostic's claims with prejudice as a matter of law. *Tatum*, 554 S.W.3d at 631-35.[9]

## II. The Article's description of Bostic as an organizer and coordinator of the January 6 "riot" and "insurrection" is not actionable in defamation because that description is not capable of ready, precise determination as true or false.

What the article *does* convey about Bostic is not actionable in defamation.  There were many different things that happened in Washington, D.C., on January 6—from speeches, protests, and rallies to violence against police officers, unlawful entry into the U.S. Capitol building, vandalism of the building and its contents, and the deaths of several people. These events have generally been collectively described as a "riot" or an "insurrection." Because those terms—particularly as used in this context—are not singularly definable, there can be no defamation claim based upon Defendants' (or others') use of them.  Bostic's claims should be dismissed for this additional reason as well.

### A. To be actionable as defamation, statements must be provably false assertions of fact.

Under the First Amendment, a statement cannot be actionable as defamation unless it "expressly or impliedly asserts facts that can be objectively verified." *Zimmer*, 257 S.W.3d at 509; *accord, e.g.*, *Tatum*, 554 S.W.3d at 638 ("statements that are not verifiable as false are not defamatory"). Thus, defamation claims cannot arise from statements that are "imprecise or

---

[9] The defenses to Bostic's defamation claims apply equally to his tortious interference claim against Petrizzo. *See, e.g.*, *Sparks v. Reneau Publ'g, Inc.*, 245 F.R.D. 583, 587 (E.D. Tex. 2007) (tortious interference claim failed "for same reasons" as libel claim because it relied "on determining the falsity of the articles"); *Galveston Newspapers, Inc. v. Norris*, 981 S.W.2d 797, 801 (Tex. App. 1998) (same, citing *Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988)); *KTRK TV v. Felder*, 950 S.W.2d 100, 108 (Tex. App. 1997) (same); *Rogers v. Dallas Morning News*, 889 S.W.2d 467, 474 (Tex. App. 1994) (same, citing *Eimann v. Soldier of Fortune Magazine, Inc.*, 680 F. Supp. 863, 866 n.3 (S.D. Tex. 1988)).

subjective" or dependent on "vague language that is subject to multiple interpretations." *Farah v. Esquire Magazine*, 736 F.3d 528, 534-35 (D.C. Cir. 2013); *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 356 (D. Mass. 2017).

The "verifiability" of a challenged statement is "a critical threshold question at the Rule 12(b)(6) stage." *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624 (D.C. Cir. 2001); *see also, e.g.*, *Zimmer*, 257 S.W.3d at 509 ("Whether a publication is an actionable statement of fact is a question of law."). Thus, for example, in *Zimmer*, the Texas Court of Appeals held that an accusation that plaintiff made "an obscene gesture with his arms" was not actionable because the characterization depended on the meaning of the "subjective and unverifiable" word 'obscene.' 257 S.W.3d at 510 (reversing denial of a "no evidence" summary judgment motion). Likewise, accusations disputing and describing as "fake" a man's claims to have invented "e-mail" were held to be non-actionable because "the operative definition of 'e-mail' . . . does not have a single, objectively correct answer." *Floor64*, 270 F. Supp. 3d at 358.

## B. The Article's characterizations of Bostic's role in January 6 are not provably false assertions of fact.

Bostic's claims arise from statements calling him a "Jan. 6 Capitol riot organizer" and someone who "helped to coordinate the Jan. 6 Capitol insurrection." Am. Compl. ¶¶ 3, 7, 22, 38-30, 34. These phrases cannot support a defamation claim consistent with the First Amendment, not only because they depend on ambiguous terms, but perhaps more importantly because their meaning, especially in this context, may vary based on the interpreter's subjective political views based on underlying facts. *See, e.g.*, *Weyrich*, 235 F.3d at 624 (The "verifiability requirement" provides "assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation.").

In particular, the words "riot" and "insurrection" cannot be defined without resort to yet other ambiguous, and politically charged, terms. "Riot" can be defined as "a noisy, violent public disorder . . . as by a crowd protesting against another group, a government policy, etc., in the streets," but it also may mean "a disturbance of the public peace . . . in a disrupting and tumultuous manner in carrying out their private purposes," a "violent *or* wild disorder or confusion," "something . . . hilariously funny," "unrestrained revelry," or "an unbridled outbreak, as of emotions, passions, etc." *See* https://www.dictionary.com/browse/riot; *see also id.* (explaining that "one may try to discredit a protest by calling it a *riot* or to discredit protesters by calling them *rioters*"). Meanwhile, "insurrection" may be defined as "an act or instance of rising in revolt, rebellion, or resistance against civil authority or an established government." *See* https://www.dictionary.com/browse/insurrection; *see also id.* ("Some journalists, political analysts, and politicians used the word *insurrection* to refer to the events that occurred in the nation's capital."). Given that the meanings of "riot" and "insurrection" depend in turn on so many additionally ambiguous words (*e.g.*, "noisy," "disorder," "public peace," "confusion," "resistance"), their meaning is inherently dependent on "individual judgment that rests solely in the eye of the beholder." *Zimmer*, 257 S.W.3d at 512.[10]

Consider, for example, Bostic's own publicly shared views. On January 8, 2021, he complained that "our elected leaders" had responded to what he describes as the protests of January 6 in a manner at odds with their response to the 2020 "BLM riots." Ex. F; *compare with, e.g.*, Ex. A at 47 (Bostic complaining about media coverage of "protestors posing for photos in

---

[10] Further, the Article does not accuse Bostic of *participating* in a "riot" or "insurrection" but of "organizing" and "helping" to "coordinate" them. Am. Compl. Ex. 1. The use of these terms adds yet another layer of ambiguity to the statements at issue.

Pelosi's office" and criticizing GOP politicians for their condemnation of "a few protestors [who] broke into the US Capitol"). A few days later, he asserted that "the people who are trying to: Remove a sitting President, block election audits," and more "are the ones leading the real insurrection." Ex. G. Over the last two years, at least, the United States has witnessed regular and large protest movements over policing policies and tactics, COVID-19 measures, and the 2020 presidential election. And this much is clear: One person's peaceful protest will almost surely be deemed another's riot by someone on the other side of the controversy—especially when discussing events as a whole or movements in the abstract. *See id.*; *see also, e.g.*, Kiyan Kassam, "Jack Del Rio Was Right About The George Floyd Riots, And He Was Punished For It," THE FEDERALIST (June 15, 2022), https://bit.ly/3HPEoRF (describing "fairly straightforward observation [that] contrasted the media's hysterical response to what happened at the Capitol building with their muted interest in covering the violent riots sparked by the death of George Floyd in 2020").

In short, Bostic's lawsuit is just an "argument [] over what to call things." *Floor64*, 270 F. Supp. 3d at 360-61. Especially given the political context of that "argument" and the subjective nature of the analysis required to resolve it, the First Amendment requires that it take place *outside* the courtroom. *See Saenz v. Playboy Enters., Inc.*, 653 F. Supp. 552, 571 (N.D. Ill. 1987) ("Political truth is an elusive concept, and the First Amendment most assuredly does not assign the determination of it to judges and juries."), *aff'd*, 841 F.2d 1309 (7th Cir. 1988); *see also, e.g.*, *Connick v. Myers*, 461 U.S. 138, 145 (1983) ("[S]peech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection."). Bostic's claims therefore should be dismissed on this ground as well.

**III.    Bostic does not—and cannot—adequately plead that Defendants published with actual malice.**

Under the First Amendment, public figures like Bostic asserting a defamation claim must plead, and ultimately prove, "that the defendant published a defamatory falsehood with . . . knowledge that it was false or with reckless disregard of whether it was false or not." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Because Bostic has failed to sufficiently plead this element of his defamation claim, and could not do so, his claims should be dismissed with prejudice.

**A.    Bostic is a limited-purpose public figure.**

The actual malice standard applies to claims asserted by a person who has "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 433 (5th Cir. 1987) (defining "limited-purpose public figure"). Whether Bostic is a public figure is a question of law the Court should decide "as soon as possible." *Miller v. Transam. Press, Inc.*, 621 F.2d 721, 724 (5th Cir. 1980); *Trotter*, 818 F.2d at 433. Courts regularly resolve this legal issue on the basis of the pleadings and facts subject to judicial notice. *See, e.g.*, *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 138 (D.D.C. 2016); *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128 (D.D.C. 2016); *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013).

To determine whether Bostic is a limited purpose public figure, the Court must determine whether (1) there was a controversy about an issue of public concern when the Article was published, (2) Bostic had "more than a tangential role in the controversy," and (3) the allegedly defamatory statements underlying Bostic's claims are "germane to the plaintiff's role in the controversy." *Trotter*, 818 F.2d at 433-34. The test is easily met here.

First, there can be no dispute that there was and remains today a substantial controversy over efforts to dispute and "stop" the certification of the 2020 presidential election, the identity of the forces behind that movement, the causes of the January 6 attack on the Capitol, and where and how to allocate legal and moral responsibility. Second, Bostic played "more than a tangential role" in these controversies. He "actually sought publicity surrounding" the 2020 presidential election and the Stop the Steal movement, "had access to the media" in his capacity as a Stop the Steal speaker and "media contact," and "voluntarily engaged in activities that necessarily involved the risk of increased exposure and injury to reputation." *McLemore*, 978 S.W.2d at 573. Indeed, well before the Article was published, there had already been public scrutiny over Bostic's work for Stop the Steal. Ex. C at 1 (asserting that one of Bostic's "lasting contribution[s] to the world" will be "the massive pro-Trump rally" he and Ali Alexander "organized on the National Mall on Jan. 6 [that] turned into a violent siege of the U.S. Capitol"). Finally, the statements underlying Bostic's claims are directly related to assessing Bostic's role in, and public statements about, the Stop the Steal movement and the events of January 6.

Bostic is therefore a limited-purpose public figure whose claims must be held to the actual malice fault standard.

## B.    Bostic has not asserted plausible allegations of actual malice.

Bostic must establish, by clear and convincing evidence, that Defendants published the Article with "actual malice." *Walker*, 938 F.3d at 744 (quoting *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 420 (Tex. 2000)). This standard, which protects core political speech such as this, requires a showing that Defendants knew they were publishing false statements or "entertained serious doubts" that their statements were true. *Id.*

Courts in this circuit and elsewhere, applying the pleading standard required by *Iqbal* and *Twombly*, hold that public figure plaintiffs must do more than make "scant assertions" that

17

defendants acted with actual malice. *See, e.g.*, *Walker*, 938 F.3d at 745 (affirming dismissal where complaint's allegations failed "to allow the court to infer more than the mere possibility of" actual malice fault); *Corsi v. Infowars LLC*, No. A-20-CV-298-LY, 2021 U.S. Dist. LEXIS 98486, at *20 (W.D. Tex. May 24, 2021) (Austin, Mag. J.) (recommending dismissal where plaintiffs "make no plausible allegations that Defendants acted with actual malice"), *adopted by* 2021 U.S. Dist. LEXIS 208688 (W.D. Tex. June 25, 2021) (Yeakel, J.).  Plaintiffs must "plead 'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' actual malice."  *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015); *accord Hourani*, 164 F. Supp. 3d at, 143-44 (rejecting "conclusory allegations" of actual malice); *Tyson v. Austin Eating Disorders, LLC*, No. A-13-CA-180-SS, 2013 U.S. Dist. LEXIS 129434, at *6-8 (W.D. Tex. Aug. 29, 2013) (Sparks, J.) (dismissing defamation claim based on qualified privilege where plaintiff failed "to plead any facts in support of actual malice" to overcome the privilege).[11]

Although Bostic alleges several facts that supposedly establish that Defendants entertained serious doubts about the truth of the Article, none of them "nudge" his actual malice fault theory "across the line from conceivable to plausible."  *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).  He alleges that Defendants knew he was not a speaker at any January 6 events yet portrayed him as such in the photo that accompanied the Article. Am. Compl. ¶¶ 5, 29. But the photo is a screenshot of a C-SPAN broadcast, and the chyron plainly shows that the year of that

---

[11] *Accord, e.g.*, *Michel v. NYP Holdings*, Inc., 816 F.3d 686, 702 (11th Cir. 2016); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013); *Mayfield v. NASCAR*, 674 F.3d 369, 377-78 (4th Cir. 2012); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012); *Phoneternet, LLC v. LexisNexis Risk Sols., Inc.*, No. 3:18-CV-1719-L, 2019 U.S. Dist. LEXIS 168169, at *18 (N.D. Tex. Sept. 30, 2019).

speech was 2020—the year before the 2021 riot.  He alleges that Defendants knew that Stop the Steal did not "host[] President Trump's rally on January 6, 2021," *id.* ¶ 30, but that says nothing of his activities or of the other events that occurred that day. He alleges that Defendants "knew or disregarded that Mr. Bostic did not climb the Capitol building steps with anyone on January 6" yet repeated *Salon*'s "lie" about this. *Id.* ¶¶ 5, 31. As discussed above, however, Defendants took pains to *distinguish* what they found from what *Salon* had reported.  *See* p. 8 *supra*.  And Bostic alleges that Petrizzo personally disliked him and his politics. Am. Compl. ¶¶ 6, 32-35. But "bad motive or ill will" do not establish actual malice. *See Walker*, 938 F.3d at 744 (quoting *Greer v. Abraham*, 489 S.W.3d 440, 444 (Tex. 2016)). The focus must be "on the defendant's attitude toward the truth, not his attitude toward the plaintiff." *Id.*; *see also, e.g.*, *Tyson*, 2013 U.S. Dist. LEXIS 129434, at *7 ("[T]he relevant state of mind is not whether the defendant dislikes the plaintiff[.]").

In short, Bostic has not pleaded facts sufficient to establish a plausible claim that Defendants knew that their characterizations of his involvement in the events of January 6 were false, or that they entertained serious doubts about their reporting. His Amended Complaint should therefore be dismissed for this additional reason as well.

### C.  Bostic cannot demonstrate actual malice as a matter of law because Defendants' characterization of his role in January 6 was a rational interpretation of ambiguous events.

Moreover, Bostic cannot cure his pleading failure because the statements in the Article are, as a matter of law, a rational interpretation of ambiguous facts concerning the causes of the events of January 6. *Pape*, 401 U.S. at 290 (mischaracterization of legal complaint was not made with actual malice because the summary of that complaint the publisher had relied on "bristled with ambiguities" and defendant's publication reflected "one of a number of possible rational interpretations" of it). Bostic spent weeks "Working  #Stop the Steal" and promoting the

19

"#WildProtest," served as a public face of the movement, livestreamed himself "Storming the Capitol" to followers, and publicly rationalized the violence of January 6 in its aftermath. *See* pp. 3-6 *supra*. Defendants' conclusion that he helped organize and coordinate the larger January 6 "riot" and "insurrection" is therefore entirely rational. As such, Defendants could not have acted with actual malice fault. *See, e.g.*, *Bose Corp. v. Consumers Union*, 466 U.S. 485, 512-13 (1984) (product reviewer's account of experience listening to music from loudspeakers was rational interpretation of the events and could not give rise to finding of actual malice); *Cantu*, 168 S.W.3d at 855 ("An understandable misinterpretation of ambiguous facts does not show actual malice."); *Saenz*, 653 F. Supp. at 572 ("Slanting or shading, particularly in an interpretive piece, does not show constitutional malice unless the underlying evidence which the piece is discussing is clear and unambiguous, and the line defendant took simply was not a possible rational interpretation of that evidence."). The Amended Complaint should therefore be dismissed on this ground as well.

## CONCLUSION

For all of the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Dated: July 1, 2022                            Respectfully submitted,

By:  */s/ Ashley I. Kissinger*
      Ashley I. Kissinger
      State Bar No. 00795464
      kissingera@ballardspahr.com
      BALLARD SPAHR LLP
      1225 17th Street, Suite 2300
      Denver, CO  80202-5596
      Telephone: 303.376.2407
      Facsimile: 303.296.3956

Chad R. Bowman (*pro hac vice pending*)
bowmanchad@ballardspahr.com
Matthew S.L. Cate (*pro hac vice pending*)
catem@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW
12th Floor
Washington, DC  20006-1157
Telephone: 202.661.2200
Facsimile: 202.661.2299

*Attorneys for Defendants The Daily Dot, LLC
and Zachary Petrizzo*