IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT
AUSTIN DIVISION

| | |
|---|---|
| DANIEL BOSTIC, | § |
| Plaintiff, | § § § § |
| v. | §  Case No. 1:22-cv-158-RP |
| THE DAILY DOT, LLC, *et al.*, | § § § |
| Defendants. | § § § |

## DEFENDANT THE DAILY DOT, LLC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Defendant The Daily Dot, LLC ("The Daily Dot") moves (1) for an order compelling Plaintiff Daniel Bostic to produce documents responsive to The Daily Dot's requests for production and to comply with certain of The Daily Dot's interrogatories, and (2) for an award of attorneys' fees incurred in bringing this motion and the motion for entry of protective order filed herewith. Undersigned counsel certifies in the attached declaration that The Daily Dot attempted in good faith, in writing and by phone over a period of nearly six weeks, to confer with Bostic but has received no response, necessitating these motions.

### BACKGROUND

This is a defamation case arising from a February 2021 article published by The Daily Dot that referenced Bostic as a "Jan. 6 Capitol riot organizer" and a person who "helped coordinate the Jan. 6 Capitol insurrection while leading the 'Stop the Steal' movement" (together, the "Challenged Statements"). *See generally* Am. Compl. Bostic has taken credit for founding Stop the Steal, acted as its media contact after the 2020 U.S. presidential election, encouraged people to come to a "#WildProtest" on January 6, 2021, and enjoyed VIP access to

that day's speeches at the Ellipse before marching with fellow VIPs and an Oath Keepers security detail to the U.S. Capitol. *See, e.g.*, *id.*; *see also* Ex. A to Defs.' Mot. to Dismiss (ECF No. 10-2) at 50. He has sued The Daily Dot and Defendant Zachary Petrizzo for defamation, seeking $15 million in damages, putting his involvement in Stop the Steal, his involvement in the events of January 6, and his alleged damages directly at issue. *See* Am. Compl.

On March 1, 2023, the Court ruled that while "[t]here are reasons to doubt Bostic's characterization of the events" that occurred on January 6, 2021, at the U.S. Capitol and his connection to them, Bostic sufficiently alleged a defamation claim arising from the Challenged Statements. Order at 16 (ECF No. 27) (the "MTD Order"). The Court also ruled, however, that "[i]f Stop the Steal did organize events that led to the January 6 insurrection, and Bostic was listed as the media contact for Stop the Steal, such evidence will likely be relevant for summary judgment." *Id.* at 17. The Court also emphasized the relevance of whether Stop the Steal had a more than "limited role in the events of January 6." *Id.* at 19.

On May 5, 2023, The Daily Dot served on Bostic a first set of requests for production of documents ("RFPs") and a first set of interrogatories. Decl. of Matthew Cate ("Cate Decl.") ¶ 2; Exs. 1-2. The day after his responses were due, Bostic sought (and The Daily Dot agreed to) an extra two weeks to comply with the requests (*i.e.*, to June 19, 2023). On June 20, 2023, Bostic served his responses, made a limited production of documents while promising to provide additional material the next week, and withheld some information and documents until entry of a protective order. Cate Decl. ¶ 4; Exs. 3-4. After more than a month and repeated requests by The Daily Dot for a status update, Bostic on July 29, 2023, provided the additional documents and a draft protective order that appeared to be based on a model used in Virginia. Cate Decl. ¶¶ 5-6.

Three days later, Bostic confirmed that, subject to his asserted objections, his production responsive to The Daily Dot's RFPs was complete. *Id.* ¶ 7. Since then, The Daily Dot has made at least six attempts to confer about entry of a protective order and several deficiencies in Bostic's responses and production. *Id.* ¶ 8 (detailing email and phone efforts from November 1, 2023, through December 8, 2023). The Daily Dot has received no response. *Id.* ¶ 9.[1]

## ARGUMENT

I.  **REQUESTS FOR PRODUCTION**

   A.  **RFP Nos. 1, 16-21, 32-34, 44: Production "without waiving objections"**

For each of these RFPs, Bostic asserts various objections and states that, "without waiving objections," he is producing documents responsive to them. Ex. 3 at 2, 7-11, 14-16, 18-19.[2] These responses are improper. *See* Fed. R. Civ. P. 34(b)(2)(C) (responding party "must state whether any responsive materials are being withheld on the basis of" objections). The Court should therefore order Bostic to amend his responses to state whether he is withholding responsive material on the basis of his objections and, if so, on the basis of *which* objection(s).

   B.  **RFP Nos. 29 and 47: Alleged lack of responsive material**

These RFPs seek phone or cell phone records for (1) a phone number Bostic used in connection with his work as a media contact for Stop the Steal and (2) other accounts for which he was the account holder or to which he otherwise had lawful access in the time between the 2020 election and the end of January 2021. Ex. 3 at 14, 19. Bostic purports not to have responsive documents in his possession, custody, or control. *Id.* By definition, however, Bostic has *control* of the responsive materials, even if he does not have possession or custody of them.

---

[1] Bostic did, however, serve discovery on The Daily Dot on December 11, 2023. Cate Decl. ¶ 10.

[2] Unless otherwise indicated, referenced exhibits are exhibits to the Cate Declaration.

*See, e.g.*, *Nvision Biomedical Techs., LLC v. Jalex Med., LLC*, 2015 U.S. Dist. LEXIS 189668, at *34 (W.D. Tex. Dec. 23, 2015) (party must obtain and produce documents "if that party 'has the legal right to obtain the documents on demand or has the practical ability to obtain the documents from a non-party"), *aff'd*, 2016 U.S. Dist. LEXIS 184524 (W.D. Tex. Feb. 1, 2016) (Pitman, J.).

In addition, to the extent there are no documents in Bostic's possession, custody, or control responsive to these RFPs (or several others in which he provided the same response) because those documents have "been destroyed, discarded, or placed outside of [Bostic's] possession, custody, or control," Bostic should identify in his responses the circumstances of that destruction or movement of material. *See* Ex. 1 at 5 ¶ 7 (requesting Bostic to provide such explanation). Bostic did not provide that information.

The Court should accordingly order Bostic (1) to provide all non-privileged documents responsive to these RFPs that are in his possession, custody, or control, including those documents are in the possession of a third party Bostic has the legal right to obtain them from, and (2) to the extent Bostic used to, but no longer, has possession, custody, or control of responsive documents, to provide The Daily Dot with the information requested regarding the lost or destroyed material.

    C.    **RFP Nos. 16, 20-21: Documents regarding election and Stop the Steal**

These requests seek documents relating to the 2020 presidential election, ballot integrity, and any Stop the Steal group. Bostic contends that discovery into anything beyond the "the events of January 6, 2021, at the U.S. Capitol" and documents that "relate to Stop the Steal" is overbroad. *See* Ex. 3 at 6-7, 10-11. But as the Court has ruled, evidence of whether "Stop the Steal did organize events *that led to* the January 6 insurrection" is relevant to the claims and defenses in this case. *See* MTD Order at 17 (emphasis added). Moreover, to the extent Bostic

— 4 —

organized or coordinated events of January 6 independently of Stop the Steal, information about those activities is equally, and centrally, relevant. Multiple organizations and people worked together throughout the post-election period to plan, organize, and host various events relating to the dispute over the outcome of the 2020 U.S. presidential election that led to or related to rallies and events held on January 6. One illustration of the multi-group and multi-person effort was alleged in Bostic's original complaint. *See* ECF No. 1 ¶ 18 (Bostic alleged that he paid for a "jumbotron" used by Women for America First to broadcast then-President Trump's speech on January 6, 2021). Notably, Bostic has produced a document showing he was asked by Stop the Steal leader Ali Alexander to use the "STS card" to pay for that equipment. *See* Ex. 7.

So, documents relating to organizations and people involved in planning, organizing, or hosting events are relevant and discoverable even if those groups or people were not formally affiliated with Stop the Steal, and even if the events occurred in 2020, because they may shed light on (1) the role of Stop the Steal (or the individuals affiliated with it) in organizing such events; (2) Bostic's role relating to those efforts; and (3) any January 6-related riot/insurrection efforts that Bostic may have engaged in outside his capacity as a Stop the Steal leader.

Nonetheless, to try to avoid the need for this motion, The Daily Dot previously offered to narrow the scope of these RFPs. *See* Ex. 5 at 4. Bostic did not respond to The Daily Dot's good-faith attempt to resolve the issues arising from these RFPs. The Court should accordingly order Bostic to comply with these RFPs as narrowed by The Daily Dot.

      **D.**      **RFP Nos. 4 and 18: Documents about activities concerning the 2020 election**

These requests seek documents concerning activities, including transportation to or from any meeting or other type of gathering, that concern the 2020 U.S. presidential election, the election and/or the integrity of the ballot-counting process in any state during that election, any Stop the Steal Group, or any other group disputing the results of the 2020 presidential election or

the ballot-counting process. Ex. 3 at 3, 8. Bostic objects to these RFPs on the ground he does not understand them. This objection is not well-taken; Bostic's contention is belied by his concession that "[t]here were many" such activities. Again, however, The Daily Dot offered to narrow these requests as well. *See id.* at 3, 8-9. And, again, Bostic did not respond to this proposal. The Court should accordingly order Bostic to comply with these RFPs as narrowed by The Daily Dot.

### E. RFP Nos. 11-14: Documents relating to "WH event" discussed in January 5, 2021 text exchange with Ali Alexander

These requests relate to an exchange in which Bostic and Ali Alexander discuss a "WH event" for January 6, 2021, and a third person's request to Daniel Bostic for access to the event.[3] Ex. 1 at 8. Bostic does not object to these RFPs, but he has produced only a single email in response to them, claiming not to have possession, custody, or control of any other responsive material. It seems unlikely that Bostic has no other responsive material in his possession, custody, or control. For example, Bostic has disclosed one email in which he forwarded a list of six people to another Stop the Steal organizer on January 2, 2021. *See* Ex. 6. It is unlikely that this is the sole document relating to the "WH event" that Bostic corresponded about on January 5, 2021. The Court should accordingly order Bostic to produce all non-privileged documents responsive to these RFPs or confirm, in writing, that no other responsive documents exist.

### F. RFP No. 22: Documents concerning payment-processing accounts or fundraising platforms

Bostic objects to this request on the grounds it is overbroad and disproportionate to the needs of the case. The Daily Dot offered to narrow the scope of this request. *See* Ex. 5 at 6. Once again, however, Bostic did not respond to The Daily Dot's good-faith attempt to resolve

---

[3] That third person is a law partner to Bostic's counsel of record in this case. The text-message exchange occurred before the article at issue in this case was published, however, and Bostic did not object to these RFPs on the grounds that they seek privileged material. Ex. 3 at 5-6.

the dispute over this RFP. The Court should order Bostic to comply with the RFP as narrowed by The Daily Dot.

### G.     RFP No. 34: Documents sent to or received from Kashyap Patel and related entities regarding claims.

This request seeks documents exchanged between Bostic and a former public official in the Trump Administration who Bostic has publicly claimed has helped fund his suit as part of an effort to fight against journalism outlets they disagree with. *See, e.g.*, Steak for Breakfast, Ep. 123 (Apr. 8, 2022), https://apple.co/3waUKiS at 02:06:55-7:10; The Chris Stigall Show, CPAC Coverage Day 2 (Feb. 26, 2022) 0:47:12-27.[4] Bostic objects to this request on the ground that it "potentially call[s] for attorney-client privileged material" and does not relate to the claims or defenses in the case. But there is little doubt that Bostic or someone on his behalf discussed this action and the facts underlying it with Patel and/or his agents, presumably including the alleged harm (or lack thereof) Bostic has suffered to his reputation and business interests.[5] Such conversations are directly relevant to the claims and defenses in this case. Further, the extent to which a well-known figure in the conservative sphere funded or otherwise assisted with this lawsuit is relevant to the issue of Bostic's status as a public figure, which Bostic has disputed and presumably would dispute in any appeal of this action. The Court therefore should order Bostic to provide all non-privileged documents responsive to this RFP.

---

[4] This podcast episode has evidently been removed from all online sources. A description of the podcast episode remains available at https://t.ly/EskCt, and a true and correct copy of the audio file is attached to the Cate Declaration as Exhibit 9.

[5] Bostic produced an email exchange from August 2022 between himself and Patel relating to Defendants' Motion to Dismiss. *See* Ex. 8. That email is presumably not the first or only document reflecting their communications about Bostic's claims.

H.  **RFP No. 38: Documents relating to appearance or potential appearance at any CPAC event from 2020 forward.**

Bostic alleges he was invited to attend CPAC 2021 but was, briefly, disinvited, allegedly as a result of the Article and allegedly causing him harm. Am. Compl. ¶¶ 37, 49-52, 57. This RFP accordingly seeks documents related to any actual or potential appearance by Bostic at CPAC during and since 2020. Ex. 3 at 16. Bostic did not object to this request and directed The Daily Dot to Bostic_000294-96. *Id.* at 17. Those two emails relate to CPAC 2020. Bostic has not produced *anything* relating to his invitation, dis-invitation, re-invitation, or attendance at CPAC 2021 (or any CPAC in years since). Given Bostic's allegation that CPAC 2021 presented "enormous" opportunities for him that the Article allegedly disrupted, and that Bostic had "many conversations with CPAC staff," Am. Compl. ¶ 52, it seems highly unlikely that Bostic has no documents responsive to this RFP. The Court should order Bostic to produce all non-privileged documents responsive to this RFP.

I.  **RFP No. 39: Documents relating to promotion of the documentary**

Bostic refuses to produce any documents relating to the promotion of a documentary he says he produced. Instead, he asserts boilerplate objections, including that the request is not reasonably related to the claims or defenses in this case. The objections are without merit: Bostic alleges that the Defendants interfered with his efforts to promote the documentary. *See, e.g.*, Am. Compl. ¶¶ 49-57. He seeks $100,000 in "compensatory damages for damage to his business and business opportunities." Ex. 4 at 9. He describes those opportunities as the chance "to highlight his own role in the production" of the documentary "and get his name and reputation out to prominent Conservatives." *Id.* at 10-11.

Bostic's efforts to promote his film are thus directly relevant to the claims and defenses in this case. For one, efforts to promote the film of course relate to whether and to what extent

Bostic suffered the compensatory damages he seeks due to the alleged interference of the ability to promote the movie (and thus promote himself). Further, like any person seeking damages, Bostic had a duty to mitigate them. Evidence of attempts to promote the movie before and after the publication of the Article bear on that key issue as well. The Court should therefore order Bostic to produce all non-privileged documents responsive to this RFP.

      **J.**      **RFP Nos. 40-41 and 43: Financial information**

These RFPs seek documents relating to the income of Bostic and his companies. Bostic objects on the ground the information is not reasonably related to the claims or defenses in this case. But Bostic seeks $15 million in economic losses, presumed damages, and punitive damages, all allegedly caused by the Article's supposed harm to his reputation and alleged tortious interference with existing or potential contracts. Bostic's income and financial status, and the income and financial status of companies he controls, are also directly relevant to whether he in fact suffered any reputational or business harm. *See, e.g.*, *Tavoulareas v. Piro*, 93 F.R.D. 11, 22 (D.D.C. 1981) (documents relating to salary and income are relevant where plaintiff claims damage to reputation). The Court should therefore order Bostic to produce all non-privileged documents responsive to these RFPs.

      **K.**      **RFP No. 46: Images and video of events of January 5-6, 2021**

This request seeks images or video depicting the events in the Washington, D.C., area on January 5-6, 2021. Bostic generally objects that only images or video he "personally took" are discoverable. Bostic's objections are without merit. For one, he is attempting without basis to exclude (1) images or videos anyone else took that depict *him* at these events and (2) images or videos taken by persons Bostic was with on those days that they later shared with him. Such material is plainly relevant to the claims and defenses in this case because they may place Bostic and his Stop the Steal cohorts at the scene of the January 6 events and show how the

"WH event," and other events Bostic played any role in that day, were related to the events of that day. The Court should therefore order Bostic to produce all non-privileged documents responsive to this RFP.

## II.     Privilege Log

Bostic asserts in response to several RFPs that responsive material might be privileged. *See, e.g.*, Ex. 3 at 14-15. The Court should therefore order Bostic to comply with Rule 26(b)(5) and provide a privilege log to the extent he has withheld any material on the basis of privilege.

## III.    Interrogatories

The Daily Dot asked Bostic to provide information regarding his alleged damages, including identification of people with knowledge of facts about his damages and all documents supporting his damages. Ex. 4 at 8-9. Bostic did not object but he provided no responsive information. *Id.* at 9. The Court should order him to do so.

## IV.    Attorneys' Fees

It is likely that much if not all of this motion could have been avoided had Bostic engaged, at all, on the foregoing issues rather than ignoring The Daily Dot's repeated outreach. The Court should therefore award The Daily Dot its attorneys' fees incurred in connection with bringing the motion. *See* Fed. R. Civ. P. 37(a)(5).

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and award The Daily Dot its attorneys' fees incurred in litigating it.

Dated: December 13, 2023

Respectfully submitted,

By: */s/ Ashley I. Kissinger*
Ashley I. Kissinger
State Bar No. 00795464
kissingera@ballardspahr.com
BALLARD SPAHR LLP
1225 17th Street, Suite 2300
Denver, CO  80202-5596
Telephone: 303.376.2407
Facsimile: 303.296.3956

Chad R. Bowman
(admitted *pro hac vice*)
bowmanchad@ballardspahr.com
Matthew S.L. Cate
(admitted *pro hac vice*)
catem@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW
12th Floor
Washington, DC  20006-1157
Telephone: 202.661.2200
Facsimile: 202.661.2299

*Attorneys for Defendants The Daily Dot, LLC and Zachary Petrizzo*

## CERTIFICATE OF SERVICE

I certify that on December 13, 2023, I caused a copy of the foregoing document to be served on counsel for Plaintiff Daniel Bostic by filing it with the Court's CM/ECF system, which provides service to all counsel of record.

*/s/ Ashley I. Kissinger*
Ashley I. Kissinger